IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Aleksey Arkadyevich Ruderman, | ) |
| Plaintiff, | ) Case No. 3:19-cv-50205 |
| v. | ) Honorable Iain D. Johnston |
| Dr. Young Sun Kim and Unknown Employees Of the County of McHenry, Illinois, | ) Magistrate Judge Margaret J. Schneider |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ruderman brought suit against Defendants for objectively unreasonable care of his ear infection while detained at the McHenry County Jail. Defendant Kim moves for summary judgment, arguing that Ruderman's claim is time-barred and even if it is not, there is no genuine issue of material fact and Kim's treatment of the ear condition was not objectively unreasonable. Dkt. 65. For the reasons that follow, Kim's motion for summary judgment is granted.

\* \* \*

As a preliminary matter, the Court must address Local Rule 56.1 and the consequences of a party's failure to comply with the rule. Local Rule 56.1(a) requires a party seeking summary judgment to file an accompanying statement of facts, with numbered paragraphs and citations to the specific evidentiary material supporting those facts, attached as exhibits. LR 56.1(a), (d). If the party opposing summary judgment disputes any of the movant's asserted facts, it must file a response, admitting or denying each numbered paragraph and including its own citations to specific evidence in the record that controverts the fact. LR 56.1(b), (e). The consequence of failure to do so is dire: "Asserted facts may be deemed admitted if not controverted with specific

1

citations to evidentiary material." LR 56.1(e)(3). The Court expects strict compliance. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). In addition, the party opposing summary judgment must file its own statement with numbered paragraphs to assert any additional facts that require the denial of summary judgment, and the movant may then file a response. See LR 56.1(b)(3), (d)(2), (c)(2). The movant's failure to controvert the opposing party's statements will likewise result in the admission of those facts.

The mechanics of Local Rule 56.1 "promote the clarity of summary judgment findings." *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011). The rule prevents the squandering of judicial resources that would occur if the Court were required "to scour through the record and determine for itself whether any of the facts asserted by the plaintiff raise material questions of fact when compared to any of the defendant's statements of fact, an exercise in which it need not engage on behalf of a party who made no effort to do so itself." *Wrenn v. Exelon Generation LLC*, No. 1:18-cv-02524, 2021 U.S. Dist. LEXIS 103384, *2 (N.D. Ill. June 2, 2021) (citing *Thornton v. M7 Aerospace LP*, 769 F.3d 757, 769 (7th Cir. 2015). Here, the plaintiff filed neither a response to the defendant's numbered statement of facts nor its own statement of additional facts. As a result, for the purposes of resolving the motion for summary judgment, the defendant's well-supported statements of fact are all deemed admitted. *See* Dkt. 67.

Additionally, Local Rule 56.1 requires that memoranda in support of or in opposition to summary judgment "cite directly to specific paragraphs in the LR 56.1 statements or responses" when addressing facts. LR 56.1(g). Again, the plaintiff neglected to comply with this rule, choosing instead to cite to the exhibits attached to the defendant's statement of facts.[1] Finally,

---

[1] Plaintiff cited to Defendant's LR 56.1(a) statement of facts a total of ten (10) times in its response memorandum. In comparison, it cited to Exhibit A one (1) time, Exhibit B fifteen (15) times, and Exhibit C fifteen (15) times, for a total of thirty-one (31) citations directly to evidentiary material in violation of LR 56.1(g). Additionally, the Court must note that Plaintiff's citations to Exhibits B and C are particularly

2

Plaintiff's continuing violation argument relies on its own Amended Complaint for a key "fact." Dkt. 68, ¶ 15 (citing Dkt. 17 without a page number reference). Because this "fact" was not properly presented through a LR 56.1 statement of facts and supported by specific evidentiary material, it is not considered for the purposes of this motion. And, of course, a party cannot rely on pleadings to defeat summary judgment. *Midwest Imports v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995).

## Background[2]

Ruderman was a civil detainee in custody of the U.S. Bureau of Immigration and Customs Enforcement ("ICE") from 2016 until 2020. He was detained at the McHenry County Jail ("MCJ") beginning in 2016 and was later moved to the Jerome Combs Detention Center in Joliet, Illinois ("JCDC") until his release in 2020. ¶ 1. While in custody at MCJ, Ruderman sought treatment for pain in his left ear and difficulty hearing. ¶¶ 3-4. Dr. Kim, who is contracted through Wellpath to provide medical services for inmates and detainees at MCJ, typically sees patients at the jail once a week, on Wednesdays. The nursing staff at MCJ provides medical care for those in custody and contacts Dr. Kim if they believe an issue is severe. ¶ 5.

Ruderman first saw Dr. Kim for his ear pain on January 29, 2016. Dr. Kim's observed Ruderman's tympanic membrane was intact and clear bilaterally, and that there was no presence of erythema or effusion in the eardrum. ¶ 6. At this time, Dr. Kim did not find any evidence of an acute ear infection. Dr. Kim would expect to see some swelling or inflammation in the ear if

---

unhelpful. Plaintiff fails to cite to page numbers, instead relying on nonsequential Bates numbering on some of the attached exhibits. On at least six occasions throughout its twelve-page motion, Plaintiff carelessly cites to "Exhibit C" but in fact cites material that is found elsewhere, many times in "Exhibit B." *See, e.g.,* Dkt. 68, ¶¶ 19, 37, 39, 40, 42, 44, 47, 48, 49.

[2] All facts are taken from the moving party's uncontroverted LR 56.1(a) Statement of Material Facts. Dkt. 67. Plaintiff's failure to respond or otherwise controvert these facts results in the Court deeming them admitted. *See Ammons*, 368 F.3d at 817.

Ruderman had severe pain such that he was requesting medical treatment. ¶ 7. That same day, Dr. Kim prescribed Naprosyn for pain relief and did not order an antibiotic because he could not tell whether Ruderman actually had a bacterial infection. ¶ 8. A few weeks later, Dr. Kim again saw Ruderman, but this time he noticed erythema and bulging of the left eardrum with effusion, which he found indicative of an ear infection. He diagnosed Ruderman with otitis media and prescribed a 14-day course of the antibiotic Bactrim, in addition to his pain medication. ¶¶ 9-10. Ruderman testified that his ear pain improved while taking Bactrim, but returned two days after he finished the medication. ¶ 11. After Ruderman submitted another healthcare request for his ongoing ear pain, Dr. Kim diagnosed him with otitis media and otitis externa after observing some exudate in Ruderman's ear. For this, he ordered Ciprofloxacin (a different antibiotic) and Maxitrol (antibiotic ear drops) because it was unclear whether one infection caused the other and because his ear infection had not resolved with the first round of antibiotics. ¶¶ 12-16. Dr. Kim stated that he wanted to see Ruderman for a follow-up in two weeks, and when he does this, the MCJ nursing staff is responsible for scheduling. ¶¶ 16-17.

Ruderman's continued to have ear pain, and began seeing fluid on his pillow when he woke up at night. He again requested to see Dr. Kim. ¶ 18. Approximately a week later, he was seen by Dr. Kim for an ear flush, and on follow-up, Dr. Kim ordered the nurses to provide Ruderman ibuprofen and cetirizine, an antihistamine, for his continued pain. ¶¶ 19-21. Dr. Kim also ordered another 14-day course of Bactrim instead of Ciprofloxacin because he wanted to see if Ruderman responded better to the other drug. Dr. Kim also explained that a patient should not take one antibiotic for too long because he could become resistant to it. ¶ 22. Ruderman again saw Dr. Kim, complaining of a "popping" or "hissing" noise when he tried to blow, in addition to his ear pain. Dr. Kim observed exudate and diagnosed him with otitis media and a possible

4

perforation of the ear drum, for which he would refer Ruderman to an ear, nose, and throat specialist ("ENT"). He continued to treat Ruderman with antibiotics and ibuprofen. ¶¶ 23-24. Dr. Kim explained that Ruderman's ear infection was common and did not require emergency treatment. He further testified that an ear infection can occur on-and-off for years, and that Ruderman's five months on-and-off ear infection was not uncommon. ¶ 28. While waiting for the ENT referral to go through, Dr. Kim ordered continued antibiotics for Ruderman's ear. ¶ 29.

Dr. Kim testified that an ear infection is a common medical issue typically handled by a family practitioner or internal medicine doctor, and that if a patient's ear infection recurs or there is a possible ear drum perforation, an ENT referral could be warranted. ¶¶ 25-26. Dr. Kim explained that MCJ has a process for medical referrals, which includes a written request sent to a reviewer who either approves or develops an alternative treatment plan. For ICE detainees, the review process is handled by ICE's approval panel. ¶ 27. Ruderman's ENT referral was eventually approved, and he saw an ENT specialist on June 8, 2016. The ENT examined Ruderman's ear, cleaned out debris from the infection, and performed a hearing test, ultimately diagnosing Ruderman with left otitis externa. The ENT recommended a different antibiotic, Cortisporin, and cleansing his ear canal with a mixture of vinegar and rubbing alcohol. ¶¶ 30-31. On June 9, 2016, Dr. Kim ordered Cortisporin and the vinegar/alcohol flush for Mr. Ruderman. Dr. Kim also testified that this treatment was similar to what he was already receiving. ¶¶ 32-33.

Ruderman testified that he was transferred out of MCJ and to another facility in Illinois within days after his ENT appointment, where he saw another doctor for his ear and was prescribed two antibiotics in addition to what the ENT had recommended. ¶¶ 34-35. After finishing his antibiotics, Ruderman said that his ear was still "not good" and he was put on a

5

waiting list to see a specialist again. Before that could happen, he was transferred back to MCJ. ¶¶ 35-36.

Back at MCJ, Ruderman again requested treatment for his ear pain. He saw a nurse, and the nurse added him to the list to see Dr. Kim. ¶ 37. Dr. Kim again saw Ruderman on October 9, 2016, and observed erythema and bulging of his ear drum, once again resulting in a diagnosis of otitis media. ¶ 38. Ruderman complained of a lump under his ear that was "really uncomfortable," but upon examination, Dr. Kim could not find anything. Ruderman testified that he was "upset" about the treatment of his ear infection at this point. ¶ 39. Dr. Kim again prescribed Ciprofloxacin and cetirizine, explaining that seasonal allergies could cause an ear infection and he wanted to try to resolve any congestion for that reason. ¶ 40. Approximately three months later, Dr. Kim ordered an antibiotic and ibuprofen for Ruderman's ear pain. ¶ 41. After finishing his antibiotics, Ruderman made a healthcare request on January 19, 2017, complaining that the left lower side of his neck was still hurting. The nurse told Ruderman he would be on the list for the doctor. ¶ 42. Two months later, Ruderman requested a hearing test. He was then seen by Dr. Kim, who referred him back to the ENT for his frequent otitis media and externa, plus his new complaint of hearing loss. ¶¶ 43-44.

On March 29, 2017, Ruderman again saw an ENT, whom he told about the lump below his ear and complained of a "watery" sound in his ear. ¶ 45. The ENT examined him and performed a hearing test. He noted that Ruderman complained of muffled hearing in his left ear and left neck lymph node swelling. The ENT found Ruderman had a "normal" ear and neck exam and mild symmetric hearing loss. ¶ 46. Ultimately, the ENT diagnosed him with eustachian tube dysfunction and sialadentitis and recommended daily Flonase. ¶ 48. Dr. Kim opined that the type of hearing loss he had was likely sensorineural and not related to the ear infection. He said

he would expect more pronounced hearing loss on the left side if it were caused by the ear infection. Additionally, he explained that the eustacian tube dysfunction is caused by lack of equilibrium in pressure, and that the Flonase could clear up congestion caused by allergies which could be causing the unbalanced pressure in Ruderman's left ear. ¶¶ 47-48. Ruderman saw Dr. Kim after seeing the ENT, and Dr. Kim entered an order for Flonase. ¶ 49.

The following month, Ruderman again requested to see medical staff regarding his ear pain, and Dr. Kim saw him several days later, on April 29, 2017. ¶¶ 50-51. Dr. Kim observed that Ruderman's ear drum was intact and clear bilaterally, and that there was no exudate or cerumen impactions present. ¶ 51.

Ruderman testified that he was transferred out of MCJ to JCDC shortly after seeing Dr. Kim on April 29, 2017. At JCDC, Ruderman sought medical treatment for the lump under his ear and the first ultrasound was inconclusive. ¶ 52. Ruderman said that a second ultrasound showed he had a swollen lymph node, and within a week of taking the antibiotic prescribed by JCDC, the lump shrunk. ¶ 53. Ruderman testified that he remained at JCDC until he was released from custody. ¶ 54. He further testified that his ear pain eventually stopped, that he still has some discomfort and hears muffled sounds, but that he does not take any medication for it and has not sought any additional treatment. ¶¶ 55-58.

Ruderman filed the present action on August 26, 2019. Dkt. 1.

## Discussion

On summary judgment, the Court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). The movant has the burden of showing that "no genuine dispute as to any material fact" exists and that it is "entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the non-movant when viewing the record and all reasonable inferences drawn from it in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beardsall, v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). Thus, to survive summary judgment, the non-movant must set forth specific facts to show that there is a genuine dispute of fact for trial. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021) (citing *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) ("As the put up or shut up moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial.")). "Summary judgment is only warranted if . . . [the court] determine[s] that no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

      Kim raises two arguments in support of summary judgment. First, Kim argues that Ruderman's claim is barred by the statute of limitations. Dkt. 66, 7. In Illinois, the statute of limitations period for § 1983 claims is two years. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). The present action was filed on August 26, 2019, which starts the clock for the statute of limitations on August 26, 2017. Kim argues that Ruderman was transferred out of MCJ shortly after he was treated on April 29, 2017, and that the statute "begins to run at the latest when the plaintiff or defendant leaves the prison," at which time, Kim lost the "'power to do something' about the plaintiff's treatment." Dkt. 66, 8 (quoting *Jones v. Feinerman*, No. 09-CV-03916, 2011 U.S. Dist. LEXIS 110419, *12 (N.D. Ill. Sep. 28, 2011)). The Court agrees.

8

In response, Ruderman argues that the statute should not begin to run until December 2018 when "he was permanently transferred outside of McHenry County Jail," or at the earliest, sometime after October 21, 2017. Dkt. 68, 3-4. To support this, Ruderman cites to his Amended Complaint (Dkt. 17) and a medical record included as an exhibit to Kim's statement of facts (Dkt. 67). This is where compliance with LR 56.1 comes into play. The Court cannot *and will not* rely upon a fact from the Amended Complaint, particularly one that may contradict Ruderman's own deposition testimony as cited by Defendant's Statement of Material Facts. *See* Dkt. 67, ¶¶ 51-54 ("On or about April 29, 2017, Dr. Kim saw Plaintiff for a complaint of ear pain. . . . Shortly thereafter, Plaintiff was transferred to the [JCDC]. . . . Plaintiff stayed at JCDC until he was released from custody."). *See James v. Hale*, 959 F.3d 307, 315-16 (7th Cir. 2020) (barring sham affidavits); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (party cannot rely on pleadings in response to summary judgment motion); Fed. R. Civ. P. 56(e).

Without a doubt, once a detainee leaves a jail, the staff at that jail lose the power to do anything about the detainee's condition. The admitted facts state that Ruderman was transferred out of MCJ "shortly thereafter" April 29, 2017. Dkt. 67, ¶ 52. The question, then, is how long "shortly thereafter" actually is. Kim argues that the statute begins to run on April 29, 2017, the last date he saw and treated Ruderman. Dkt. 69, 5. This may be the relevant date, because "shortly thereafter" could conceivably mean later that afternoon. Or it could mean a month later, which is still not enough. "Shortly thereafter" would have to mean four months later to bring his claim within the statutory period that starts on August 26, 2017. Drawing all reasonable inferences in favor of Ruderman, this is not a reasonable understanding of the plain language of the facts.

9

As to Ruderman's argument that the continuing violation doctrine[3] should apply, there is simply no support in the facts for what he proposes, which is "a period of time spanning nearly two years beginning in January 2016 and continuing through the time he was permanently transferred outside of [MCJ], in or around December 2018." Dkt. 68, 4. Thus, the Court finds this § 1983 claim to be time-barred. And because the Court finds Ruderman's claim untimely filed, Kim's alternative argument, that no reasonable jury could conclude Dr. Kim's treatment of Ruderman's ear issue was objectively unreasonable, need not be addressed.[4] Dkt. 66, 9.

## Order

Defendant Kim's motion for summary judgment [65] is granted with prejudice because Ruderman's claim was filed after the two-year statute of limitations had already run out. Civil case terminated.

Date:   January 20, 2022              By:     _____
                                              IAIN D. JOHNSTON
                                              United States District Judge

---

[3] Even if the Court were to consider the treatment of Ruderman's ear issues as a continuing violation, the clock restarts every time the detainee is transferred out and back into MCJ. *See Bernard v. Scott,* 501 F. Supp. 3d 611, 620-22 (N.D. Ill. 2020).

[4] Even if Ruderman's claim was timely filed, the Court is convinced that no jury could find Dr. Kim's treatment of Ruderman's ear infection and pain to be objectively unreasonable. There are voluminous facts in the record detailing the various examinations, medications, and specialist referrals that comprised Dr. Kim's care. And if that weren't enough, when Ruderman was seen by two different ENTs, the treatment they recommended was much the same as Dr. Kim was already providing. Further, the ENTs were similarly unsuccessful in curing his recurrent ear infections.